UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MALKITZEDEK ZIRKIND,<br><br>Plaintiff,<br><br>v.<br><br>SEAN DUFFY,<br>Secretary, Department of Transportation,<br><br>Defendant. | Civil Action No. 25-3544 (ACR) |

**REPLY IN SUPPORT OF DEFENDANT'S**
**MOTION TO DISMISS OR, ALTERNATIVELY, FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS


Table of Contents ........ i

Table of Authorities ........ ii

Argument ........ 3

I. Plaintiff Exhausted One Discrete Claim ........ 3

A. Plaintiff's Administrative Complaint Does Not Exhaust the Multi-Year, Continuing Accommodation Claim Alleged in the Amended Complaint .. 3

B. Allegations Forty-Five Days Before the EEO Counseling and Allegations After the Issuance of the Final Agency Decision Are Unexhausted ........ 5

C. The Discrete Acts That Are Exhausted ........ 6

II. The Accommodations Were Reasonable as a Matter of Law ........ 7

A. Plaintiff's Case Law Supports Defendant's Position That Paid Leave is a Reasonable Accommodation ........ 9

B. Plaintiff's Proposed Accommodations ........ 13

III. Plaintiff Cannot Satisfy the Third Element of His *Prima Facie* Burden ........ 14

A. *Muldrow* Did Not Alter the Discipline Element, and Plaintiff Fails to Satisfy the Third Element of Disciplinary/Adverse Action ........ 14

B. The Case Law Shows Plaintiff Cannot Meet His Burden ........ 16

IV. Plaintiff's Disparate Treatment Was Not Exhausted and Is Not Plausibly Pled .. 20

A. Plaintiff's Disparate Treatment Claim Was Not Exhausted ........ 20

B. Plaintiff's Disparate Treatment Claim Fails on the Merits ........ 22

V. The Department's Motion and Exhibits are Properly Before This Court ........ 23

A. The Court May Rely on the Department's Exhibits Without Converting to Summary Judgment ........ 23

B. The Alternative Request for Summary Judgment is Properly Before the Court ........ 24

C. The Department's Exhibits Are Admissible ........ 25

## TABLE OF AUTHORITIES

*Page(s)*

**Cases**

*Abdelkader v. Sears, Roebuck & Co.*,

780 F. Supp. 2d 389 (D. Md. 2011) .......... 19

*Ace Am. Ins. Co. v. Fed. Crop Ins. Corp.*,

209 F. Supp. 3d 343 (D.D.C. 2016) .......... 16

*Aka v. Washington Hosp. Ctr.*,

156 F.3d 1284 (D.C. Cir. 1998) .......... 9

*Ansonia Bd. of Educ. v. Philbrook*,

479 U.S. 60 (1986) .......... passim

*Bain v. Off. of Att'y Gen.*,

648 F. Supp. 3d 19 (D.D.C. 2022) .......... 20, 21

*Chukwueze v. NYCERS*,

891 F. Supp. 2d 443 (S.D.N.Y. 2012) .......... 14

*Dismukes v. United States Dep't of Veterans Affs.*, Civ. A.,

No. 23-02259 (ACR), 2025 WL 343190 (D.D.C. Jan. 30, 2025) .......... 3

*Dixon v. Ashcroft*,

392 F.3d 212 (6th Cir. 2004) .......... 21, 22

*E.E.O.C. v. Firestone Fibers & Textiles Co.*,

515 F.3d 307 (4th Cir. 2008) .......... 11, 12, 13

*EEOC v. Abercombie & Fitch Stores, Inc.*,

575 U.S. 768 (2015) .......... 23

*Elmenayer v. ABF Freight Systems, Inc.*,

318 F.3d 130 (2d Cir. 2003)........................................................................................ 4, 5

*Francis v. Perez*,

970 F. Supp. 2d 48 (D.D.C. 2013) .............................................................................. 8

*Groff v. DeJoy*,

600 U.S. 447 (2023)................................................................................................. 9, 14

*Kalejaiye v. Quality Investigations, Inc.*,

Civ. A. No. 19-02647 (RC), 2024 WL 1213322 (D.D.C. Mar. 21, 2024)................................ 8

*Lemmons v. Georgetown Univ. Hosp.*,

431 F. Supp. 2d 76 (D.D.C. 2006) ............................................................................. 15

*Loffredo v. Daimler AG*,

666 F. App'x 370 (6th Cir. 2016).............................................................................. 22

*Muldrow v. City of St. Louis*,

601 U.S. 346 (2024)................................................................................................... 15

*Nashville Gas Co. v. Satty*,

434 U.S. 136 (1977)..................................................................................................... 9

*Nat'l R.R. Passenger Corp. v. Morgan*,

536 U.S. 101 (2002)............................................................................................. 4, 5, 7

*O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*,

833 F. App'x 605 (6th Cir. 2020)................................................................................ 7

*O'Neill v. City of Bridgeport Police Dep't*,

719 F. Supp. 2d 219 (D. Conn. 2010).................................................................. 16, 18, 19

*Pappas v. District of Columbia*,

513 F. Supp. 3d 64 (D.D.C. 2021) ........................................................................................ 16

*Park v. Howard Univ.*,

71 F.3d 904 (D.C. Cir. 1995) ........................................................................................ 7, 8

*Phillips v. Shelby Cnty., TN Gov't*,

No. 23-5118, 2024 WL 3384190 (6th Cir. July 9, 2024)........................................................ 6, 7

*Rashad v. Washington Metro. Area Transit Auth.*,

945 F. Supp. 2d 152 (D.D.C. 2013) .................................................................... 8, 11, 20

*Ringhofer v. Mayo Clinic Ambulance*,

102 F.4th 894 (8th Cir. 2024) ........................................................................................ 6

*Sandberg v. Noem*, Civ. A.,

Civ. A. No. DKC 24-3257, 2025 WL 3550657 (D. Md. Dec. 11, 2025) .......................... 13, 20

*St. Juste v. Metro Plus Health Plan*,

8 F. Supp. 3d 287 (E.D.N.Y. 2014) ........................................................................ 17, 18

*Tabura v. Kellogg USA*,

880 F.3d 544 (10th Cir. 2018) ........................................................................................ 10

*Tepper v. Potter*,

505 F.3d 508 (6th Cir. 2007) ........................................................................................ 20

Thomas v. Nat'l Ass'n of Letter Carriers,

225 F.3d 1149 (10th Cir. 2000) ........................................................................................ 10

*Trans World Airlines, Inc. v. Hardison*,

432 U.S. 63 (1977)........................................................................................ 9, 11

*US Airways, Inc. v. Barnett*,
535 U.S. 391 (2002) ... 9

**Statutes**

42 U.S.C. § 2000e-2(h) ... 23

**Rules**

Fed. R. Civ. P. 1 ... 24

Fed. R. Civ. P. 56(d) ... 25

Fed. R. Evid. 803(8) ... 25

**Regulations**

29 C.F.R. § 1605.2(d)(1)(i) ... 13

29 C.F.R. § 1614.105(a)(1) ... 7

In the Amended Complaint ("Am. Compl.," ECF No. 24), Plaintiff Malkitzedek Zirkind asserts one claim for religious discrimination and pursues two theories under that single claim—(1) failure to accommodate and (2) disparate treatment—against Defendant Sean Duffy, in his official capacity as Secretary of the Department of Transportation (the "Department"). But the law is clear on the matter, and Plaintiff cannot overcome it.

First, Plaintiff has never worked on the Sabbath and was on paid leave for each and every Sabbath observance. He was therefore reasonably accommodated by his employer, and he cannot satisfy his *prima facie* burden for a failure-to-accommodate theory. Second, Plaintiff's assertion that he was discriminated because he used paid leave to observe the Sabbath is not disparate treatment by the Department, it is the decision by Plaintiff on how to use his leave hours.

Plaintiff's opposition ("Pl.'s Opp'n," ECF No. 32) relies on Defendant's Exhibit 1— which is Plaintiff's leave history for the pay period of January 2020 through June 2026—to claim Plaintiff was on unpaid leave to observe the Sabbath for a single instance on November 5, 2022. Plaintiff is incorrect. He was paid for November 5, 2022, and his time was coded as religious comp time.

Plaintiff reproduced two pages of Defendant's Exhibit 1 as his own. *See* Pl.'s Ex. F (ECF No. 32) at 73-74.[1] However, Plaintiff's excerpt of Defendant's Exhibit 1 is incomplete.[2] The complete record for the November 5, 2022, shows Plaintiff originally coded for religious comp time. Def.'s Ex. 6 at 1-2. The first amended timesheet shows Plaintiff was then coded for leave without pay. *Id.* at 2-3. The second amended timesheet shows Plaintiff was then re-coded for religious comp time. *Id.* at 3-4; *see also* Declaration of Trisha Newberry ("Newberry Decl.") at 2.

[1] Defendant refers to the PDF page number for all record citations.

[2] The complete timesheets for November 5, 2022, are reproduced as Defendant's Exhibit 6 for ease of reference. There are three timesheets for the pay period that includes November 5, 2022—the original timesheet, the first amended timesheet, and the second amended timesheet.

Plaintiff's Exhibit F shows at the top of the first page that Plaintiff was on paid leave (religious comp time CODE 043) for "11/05/2022." *See* Pl's Ex. F (ECF No. 32) at 73. That is part of the original time sheet. *Compare* Pl.'s Ex F. (ECF No. 32) at 73 *with* Def.'s Mot. at 128-29. There were then two amendments to the original timesheet. On the second page of Plaintiff's Exhibit F, Plaintiff highlights that he was coded for unpaid leave (Leave Without Pay CODE 12) on "11/05/2022." *See* Pl's Ex. F (ECF No. 32) at 74. This is the first amended timesheet. At the bottom of the second page, there is a portion of the second amended timesheet. *See id.* at 74.

In Defendant's Exhibit 1, the second amended timesheet shows Plaintiff was re-coded for paid leave (religious comp time CODE 043) on "11/05/2022." *See* Def.'s Mot. at 131; *see also* Def.'s Ex. 6 at 4; Newberry Decl. at 2. In summation: the November 5, 2022, shift was originally coded as religious comp time, then coded to leave without pay, and then reverted back to religious comp time in the next pay period (Def.'s Ex. 6):

| **Record** | **TA Type** | **Processed** | **Approved by** | **11/05/2022 code** |
|---|---|---|---|---|
| Def.'s Ex. 6 at 1-2 | Original | 2022223 | Thompson, Cherie M | 043—Religious Comp Time Used |
| Def.'s Ex. 6 at 2-3 | Amended | 2022224 | Parks, Richard L | 12—Leave Without Pay |
| Def.'s Ex. 6 at 3-4 | Amended | 2022225 | Merlin, Carrie L | 043—Religious Comp Time Used |

Plaintiff was aware of this re-coding issue. On April 7, 2026, the Department explained the temporary coding and the correction to Plaintiff. *See* Def.'s Ex. 7. Plaintiff was informed that the Department searched its records and found no unpaid leave entries but for the temporary November 5, 2022, coding issue, and that "Plaintiff was paid for 11/5/2022." *Id.* Plaintiff did not respond.

## ARGUMENT

### I. <u>Plaintiff Exhausted One Discrete Claim</u>

#### A. Plaintiff's Administrative Complaint Does Not Exhaust the Multi-Year, Continuing Accommodation Claim Alleged in the Amended Complaint

Plaintiff contends that his one contact with an EEO counselor on June 17, 2022, about a discrete request for an alternative work schedule on June 10, 2022, exhausts every allegation in his amended complaint spanning more than seven years (from 2019 to the present). Pl.'s Opp'n at 8-12, 46; *see also* Am. Compl. ¶ 17. Specifically, Plaintiff claims that his single contact with the EEO counselor on June 17, 2022, allows him to bring every allegation—including allegations that occurred more than forty-five days prior to his contact with an EEO counselor and every other allegation through to the present day. *Id.* at 4. In other words, Plaintiff's position provides no limits and would render the EEO investigative process a nullity for religious accommodation cases.

There is a limit. At most, May 3, 2022 and March 24, 2025 establish the outer temporal bounds of conduct that could have been encompassed by the administrative process; they do not render every discrete act during that period exhausted. Allegations falling outside of May 3, 2022 and March 24, 2025 are not exhausted.

Plaintiff's reliance on *Elmenayer v. ABF Freight Systems, Inc.*, 318 F.3d 130 (2d Cir. 2003) and his rejection of the application of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), are misplaced. Pl.'s Opp'n at 9.

*Elmenayer* rejected Plaintiff's argument that denying a religious accommodation is part of a continuous conduct scheme. *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 135 (2d Cir. 2003) ("Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete

act.”). Plaintiff’s opposition overlooks that the Department denied his request for a change to his schedule on June 10, 2022, and placed him on annual leave instead. That is a rejection of Plaintiff’s proposed accommodation, and the Department providing a reasonable accommodation—paid leave.

In *Elmenayer*, the Second Circuit held “[t]he rejection of a proposed accommodation is a single completed action when taken, quite unlike the ‘series of separate acts’ that constitute a hostile work environment and ‘collectively constitute’ an unlawful employment practice.” 318 F.3d at 135 (quoting *Morgan*, 536 U.S. at 117). There, the plaintiff requested a religious accommodation on April 10, 1996, and the employer denied it on June 13, 1996. *Id.* at 132. The plaintiff then filed his EEOC complaint on October 16, 1997. *Id.* The parties disputed whether the denial of a religious accommodation, a request for time off for prayer “held in a mosque on Fridays between the hours of 12 and 2 P.M.,” *id.* at 132, constituted a continuing violation. *Id.* at 134 (“No decision appears to have considered whether an employer's allegedly unreasonable rejection of an employee's proposed accommodation of his religious practices is a continuing violation. However, two decisions of the Supreme Court provide considerable guidance.”). The Second Circuit, relying on *Morgan*, concluded “[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.” *Id.* (quoting *Morgan*, 536 U.S. at 112).

Here, Plaintiff’s accommodation request was for a single instance in 2022, where Plaintiff requested an alternate work schedule for one Saturday. Am. Compl. ¶ 84. The Department denied his request, and he was placed on annual leave. *Id.* Specifically, Plaintiff “submitted a request for an alternate work schedule on April 6, 2022, so as not to work a shift he had been assigned for June 10, 2022.” Def.’s Ex. A, Final Agency Decision (Def.’s Mot.) at 42; Am. Compl. ¶ 84. While Plaintiff claims “there is an ongoing give-and-take regarding his requests for accommodation for

the Sabbath," Pl.'s Mot. at 9, the Report of Investigation ("ROI") shows management communicating about how to address religious accommodations moving forward and responding to specific accommodation requests from Plaintiff. *See* Pl.'s Ex. B, ROI (Pl.'s Opp'n) at 50-59. More, the ROI title page provides the date of alleged discrimination is "June 10, 2022." *Id.* at 46.

Finally, Plaintiff's attempt to get around exhaustion requirements by claiming an "ongoing give-and-take" is not supported by caselaw and would disincentivize communication because an employer who continues to communicate with an employee following a denied accommodation would forfeit setting a limitations period for exhaustion of a claim indefinitely.

### B. Allegations Forty-Five Days Before the EEO Counseling and Allegations After the Issuance of the Final Agency Decision Are Unexhausted

Even if the Court credits Plaintiff's argument of ongoing give-and-take conduct, Plaintiff's case citations are inapposite. Pl.'s Opp'n at 9-12.

In each of the employment termination cases Plaintiff cites, each entity had an opportunity to investigate because a termination occurred during the administrative process.

In *Ringhofer v. Mayo Clinic Ambulance*, 102 F.4th 894 (8th Cir. 2024), the defendant issued final written warnings on December 3, 2022, directing staff to comply with its vaccination policy by January 3 "or be terminated," *id.* at 899, and then the defendant terminated the two employees that were challenging exhaustion on appeal within a month, *id.* at 900 ("Ihde's employment was terminated less than a month after she filed an EEOC charge challenging the policy—Miller less than a week . . . . The district court erred in finding that Miller and Ihde did not exhaust their administrative remedies under Title VII.").

In *Phillips v. Shelby County, Tennessee Government*, No. 23-5118, 2024 WL 3384190 (6th Cir. July 9, 2024), the plaintiff filed her charge on November 11, 2020, and she was terminated in March 2021. *Id.* at *1. The EEOC closed its investigation on August 30, 2021. *Id.* The Sixth

Circuit concluded the plaintiff exhausted her termination claim because "[a]lthough [plaintiff's] termination postdated filing of her discrimination charge, the EEOC covered her termination in its investigation." *Id.*, at *4. *Phillips* also expressly notes in the Sixth Circuit that a "continuing-violation theory is only available for hostile-work-environment claims." *Id.*, at *3 (quoting *O'Donnell v. Univ. Hosps. Cleveland Med. Ctr.*, 833 F. App'x 605, 613 (6th Cir. 2020)). Because, " '[t]heir very nature involves repeated conduct' where the claim is 'based on the cumulative effect of all such acts.' " *O'Donnell*, 833 F. App'x at 614 (quoting *Morgan* 560 U.S. at 115).

Neither decision disturbs Defendant's position. Rather each of Plaintiff's authorities support Defendant. Conduct occurring more than forty-five days before he contacted an EEO counselor on June 17, 2022, and conduct after the issuance of the Final Agency Decision on March 24, 2025, are unexhausted because this range affords the Department an opportunity to investigate.

### C. The Discrete Acts That Are Exhausted

Plaintiff contacted an EEO counselor on June 17, 2022. Am. Compl. ¶ 83. Discrete acts occurring more than forty-five days earlier, meaning before May 3, 2022, are untimely. 29 C.F.R. § 1614.105(a)(1); *Morgan* 536 U.S. at 113 ("The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed."). Thus, Plaintiff's allegations that "since 2019" Plaintiff was compelled to use annual leave, parental leave, holidays, and sick leave, along with his 2019 bidding allegations are time-barred. Am. Compl. ¶¶ 14, 17-19.

On the other side, the issuance of the Final Agency Decision "on March 24, 2025," *id.* ¶ 86, is the absolute last cutoff date.[3] Conduct after the Final Agency Decision issued could not be

3 The EEO Formal Complaint was filed on September 22, 2022. Am. Compl. ¶ 85; Def.'s Ex. 8. Plaintiff could amend his complaint until the ROI issued on January 4, 2023 (when the

presented to an EEO counselor for investigation and is time-barred. *See Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995) (cleaned up) ("The administrative charge requirement serves the important purposes of giving the charged party notice of the claim and narrowing the issues for prompt adjudication and decision."). At a minimum, Plaintiff's allegations, described as "[m]ore recently" in paragraph 74 through 78 of the Amended Complaint, are time-barred, including the requirement to propose weekly schedules, instructions for management not to touch Plaintiff's schedule, a consecutive day rule, comparison to other employees and the consecutive day rule, and management not assisting him with shift or line swapping. Am. Compl. ¶¶ 74-78.

## II. **The Accommodations Were Reasonable as a Matter of Law**

Plaintiff claims he was not provided a reasonable accommodation. Pl.'s Opp'n at 12. Specifically, "exhaust[ing] sick leave, paternity leave and tak[ing] unpaid leave to avoid working on the Sabbath does not constitute a reasonable accommodation as a matter of law." *Id.* Plaintiff does not cite legal authority in support of his position that, as a matter of law, he was not afforded a reasonable accommodation. Instead, Plaintiff argues reasonableness is a jury question which cannot be decided on a motion to dismiss or summary judgment. *Id.*

Plaintiff does not cite any cases in this Circuit to support his position that reasonableness is a jury question. And, courts in this Circuit do decide religious accommodation questions as a matter of law. *See Rashad v. Washington Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 165 (D.D.C. 2013); *Kalejaiye v. Quality Investigations, Inc.*, Civ. A. No. 19-02647 (RC), 2024 WL

---

investigation ended). *Id.*; 29 C.F.R. § 1614.106(d). Plaintiff did not amend his complaint, and any "ongoing give-and-take" that could have been captured by the investigation ended when the ROI issued. Whether January 4, 2023, or March 24, 2025, is the cutoff date, the only exhausted claim is Plaintiff's request for a single accommodation for June 10, 2022. Am. Compl. ¶ 84.

1213322 (D.D.C. Mar. 21, 2024); *Francis v. Perez*, 970 F. Supp. 2d 48, 64 (D.D.C. 2013), *aff'd,* No. 13-5333, 2014 WL 3013727 (D.C. Cir. May 16, 2014).

Contrasting, Defendant's position—paid leave is a reasonable accommodation—is supported by binding precedent. First, a reasonable accommodation discharges an employer's duty. "Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end. The employer need not further show that each of the employee's alternative accommodations would result in undue hardship." *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 68 (1986).

Second, paid leave—indeed, even unpaid leave—is a reasonable accommodation. "The provision of unpaid leave eliminates the conflict between employment requirements and religious practices by allowing the individual to observe fully religious holy days and requires him only to give up compensation for a day that he did not in fact work." *Id.* at 70. "Generally speaking, '[t]he direct effect of [unpaid leave] is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status.'" *Id.* at 70-71 (quoting *Nashville Gas Co. v. Satty*, 434 U.S. 136, 145 (1977)). This principle applies more forcefully here, where Plaintiff was always on paid leave. *See* Def.'s Ex. 1 (Def.'s Mot.) at 51-248; Def.'s Ex. 6; Newberry Decl. at 2.

Third, Title VII does not require an employer to override a bona fide seniority system. *Groff v. DeJoy*, 600 U.S. 447, 472 (2023), left the rule in *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977), untouched. In *Hardison*, the Supreme Court held that Title VII "does not require an employer and a union who have agreed on a seniority system to deprive senior employees of their seniority rights in order to accommodate a junior employee's religious practices." 600 U.S. at 83 n.14. The Supreme Court reasoned that its "conclusion is supported by

the fact that seniority systems are afforded special treatment under Title VII itself." *Id.* at 81; *see also* 600 U.S. at 462 n.10 (citing *Hardison*, 432 U.S. at 83, and n.14) ("We do not understand Groff to challenge the continued vitality of *Hardison*'s core holding on its 'principal issue' (bracketing his disputes that the memorandum of understanding set forth a seniority system)").

Fourth, "reasonable" does not mean "effective." *US Airways, Inc. v. Barnett*, 535 U.S. 391, 399-401 (2002). "An employer is not required to provide an employee that accommodation he requests or prefers, the employer need only provide some reasonable accommodation." *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1305 (D.C. Cir. 1998).

Plaintiff did not engage with any of these principles in his opposition. Nor has Plaintiff provided any case law in this Circuit, or elsewhere, before or after *Muldrow*, which holds that an employee who is paid for every religious absence, who has never worked on the Sabbath, and who was never disciplined has satisfied his *prima facie* burden to state a failure-to-accommodate claim. Nor has Plaintiff provided any case law showing paid leave is not a reasonable accommodation.

### A. Plaintiff's Case Law Supports Defendant's Position That Paid Leave is a Reasonable Accommodation

First, Plaintiff places his reliance on a Tenth Circuit case to argue that reasonableness is a jury question. Pl.'s Opp'n at 12-13 (citing *Tabura v. Kellogg USA*, 880 F.3d 544 (10th Cir. 2018)). In *Tabura*, the plaintiffs were discharged for excessive absences. *Id.* at 549. The Tenth Circuit noted that "[i]n *Thomas* [*v. Nat'l Ass'n of Letter Carriers*], this Court affirmed summary judgment for the employer (without requiring a trial) where the employer permitted the employee to use paid leave to avoid working on his Sabbath, would have approved voluntary shift swaps when the employee could arrange them, and unsuccessfully sought a waiver from the union to change his schedule. 225 F.3d 1149, 1156 (10th Cir. 2000)." *Id.* at 555 n. 11.

That is like the situation here. Here, Plaintiff has never worked on the Sabbath, and has used paid leave for every Sabbath observance. *See* Def.'s Mot. (Ex. 1) at 51-248; Ex. 6; Am. Compl. ¶ 10. More, the terms and conditions of Plaintiff's employment are governed by a Collective Bargaining Agreement, which includes a seniority bidding system, a leave seniority system, and voluntary shift swaps. *See* Def's Statement of Undisputed Material Facts ("Def.'s Stmt.") Nos. 7-11. Thus, under *Thomas* and *Tabura*, this case is ripe for resolution on the Department's motion and should be decided in favor of the Department.

Plaintiff's AWOL allegations do not alter the analysis. Pl.'s Opp'n at 13. Plaintiff declares he was "deemed AWOL on August 29, 2026 and September 5, 2026 because [he] could not come to work on the Sabbath." Plaintiff's newly asserted AWOL allegations post-date the administrative process and the filing of this action and therefore were never presented to the Agency for investigation. Plaintiff also does not allege that either coding resulted in a loss of pay or discipline.[4] Accordingly, those post-filing incidents cannot establish the exhausted accommodation claim presently before the Court.

Furthermore, in this Circuit, a court found an AWOL warning fails to meet the legal standard for a materially adverse action. *See Rashad*, 945 F. Supp. 2d at 164 ("The AWOL warning here merely informed [the plaintiff] that her absence would be recorded as 'without leave' and that additional instances of AWOL could result in disciplinary action."). Similarly, here, Plaintiff has provided no context and has not claimed the AWOL determination caused any harm and is therefore not an adverse action.

[4] The AWOL coding reflects a portion of Plaintiff's schedule shift for which he had not reported for duty and did not then have approved leave. Newberry Decl. After Plaintiff made contact with the Department and submitted a leave request, his request was approved for both August 29, 2026 and September 5, 2026. *Id.*

Second, Plaintiff claims the Department's reliance on *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 313 (4th Cir. 2008), is misguided because there the employer considered and rejected alternative accommodations. Pl.'s Opp'n at 13. But "where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end." *Philbrook*, 479 U.S. at 68. In *Firestone*, the Fourth Circuit observed a seniority-based bidding system for working shifts, annual leave for religious observance, and a "no fault" attendance policy to use unpaid leave for up to sixty hours were significant accommodations. 515 F.3d at 315-316 (citing *Hardison*, 432 U.S. at 78 and *Philbrook*, 479 U.S. at 64, 70-71). *Firestone* also held shift swaps are a reasonable accommodation. *Id.* at 316 (citing *Philbrook* 479 U.S. at 69).

Here, Plaintiff has received each accommodation the Fourth Circuit found reasonable and then some. *See* Def.'s Stmt. Nos. 7-13; Def.'s Mot. (Ex. 1) at 51-248; *see also* Def.'s Ex. 6. The Department provides a seniority-based bidding system for working shifts, voluntary shift swaps, and annual leave for religious observance. Plaintiff's accommodations are even more significant because the record for the exhausted claim does not establish Plaintiff was required to take unpaid leave to observe the Sabbath.

Third, Plaintiff claims he presented alternative accommodations for the Department to consider. Pl.'s Opp'n 13-14. Plaintiff's proposed alternative accommodations derive from Plaintiff's declaration, which is attached to his opposition. *See id.* at 14. The proposed alternative accommodations are not found in the ROI or the Final Agency Decision. *See generally* Pl.'s Ex. B, ROI (Pl.'s Opp'n) at 46-59; Def.'s Ex. A, Final Agency Decision (Def.'s Mot.) at 39-50. Furthermore, as discussed in Section I.A. above, the single exhausted accommodation request is Plaintiff's request for an alternative schedule for one Sabbath, "not to work a shift he had been assigned for June 10, 2022." *Id.* at 42; Am. Compl. ¶ 84. And, "instead of accommodating his

schedule request" the Department placed him "on annual leave instead[.]" Am. Compl. ¶ 84. In other words, Plaintiff requested an accommodation, and the Department responded with a reasonable accommodation—placing Plaintiff on annual leave, ending the matter. "In fact, 'where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.'" *Firestone*, 515 F.3d at 312 (quoting *Philbrook*, 479 U.S. at 68).

Fourth, Plaintiff relies on an EEOC case in *Charlie L., 1 v. Carlos del Toro, Secretary of the Navy*, 125 LRP 1607, Appeal No. 2022003545 (Dec. 10, 2024). Pl.'s Opp'n at 15-16, 60-68. *Charlie L* is readily distinguishable. The decision found "no language in the [Collective Bargaining Agreement] that would preclude the painter's request" and that the Collective Bargaining Agreement "was silent regarding religious accommodations." *Id.* at 60. Here, the Collective Bargaining Agreement is not silent on how to address Sabbath observance. Def.'s Stmt. No. 13. Article 26, Section 3 provides that "requests for annual leave, use of credit hours, compensatory time, or leave without pay to observe the Sabbath or religious holidays shall be granted unless staffing and workload do not permit." *Id.* That is what occurred here—Plaintiff was permitted to use paid leave. *See* Am. Compl. ¶ 84.

Finally, Plaintiff seeks to discredit *Sandberg v. Noem*, Civ. A. No. DKC 24-3257, 2025 WL 3550657 (D. Md. Dec. 11, 2025). Pl.'s Opp'n at 14-15. Plaintiff claims the Department "has done virtually nothing to facilitate trade swaps." *Id.* at 14. But the footnote in *Sandberg* combined with Plaintiff's Amended Complaint confirms the Department has, in fact, facilitated trade swaps.

In *Sandberg*, the court noted that providing voluntary shift trades is facilitating trade swaps:

> The EEOC regulations expressly provide that voluntary shift trades are a reasonable accommodation. 29 C.F.R. § 1605.2(d)(1)(i). If the employer offers voluntary shift trades, the employer's obligation is to "facilitate the securing of a voluntary substitute with substantially similar qualifications" through, for instance, "a central file, bulletin board or other means for matching voluntary substitutes with positions for which substitutes are needed." *Id.*

*Sandberg*, 2025 WL 3550657, at *8 n.7.

In the Amended Complaint, Plaintiff acknowledges that the Collective Bargaining Agreement allows shift swapping "through a platform called WMT." Am. Compl. ¶ 28; *see also* Def.'s Stmt. No. 11. Plaintiff previously "was able to arrange to swap schedules with a colleague." *Id.* ¶ 14. But whether a swap is successful "does not render the accommodation any less significant in the reasonableness calculus." *Firestone*, 515 F.3d at 316 (citing *Philbrook*, 479 U.S. at 69).

While Plaintiff objects to using various forms of paid leave to observe the Sabbath, he can cite to no case to support his position. Even without *Sandberg*, binding precedent supports the Department's position—that paid leave, along with the other accommodations including a seniority-based bidding system for working shifts, voluntary shift swaps, seniority primetime leave bidding, and first-come-first-serve leave under the Collective Bargaining Agreement—are reasonable accommodations. Def.'s Stmt. ¶¶ 7-13. "Put simply, [the Department] did accommodate him." *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443, 454 (S.D.N.Y. 2012).

**B. Plaintiff's Proposed Accommodations**

Plaintiff argues the Department's explanation for why Plaintiff's proposed alternative accommodations are unworkable are "false." Pl.'s Opp'n at 17-18. Plaintiff is referring to the list of proposed alternative accommodations in his Amended Complaint. *See* Am. Compl. ¶ 2.

As a preliminary matter, as discussed in Section I.A., the only exhausted claim is Plaintiff's single request for "a change of schedule" for one day in 2022, in which the Department provided a reasonable accommodation by placing Plaintiff on annual leave. *Id.* ¶ 84. Plaintiff's Amended Complaint provides "multiple potential accommodations," but he does not identify when he presented them to the Department. *Id.* ¶ 82. The proposed alternatives are not in the ROI or mentioned in the Final Agency Decision.

In any event, the Department was not obligated to justify declining each of the nine proposals. In *Groff*, the Supreme Court held that "Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." 600 U.S. at 473. "[I]t would not be enough for an employer to conclude that forcing other employees to work overtime would constitute undue hardship." *Id.* "Consideration of other options, such as voluntary shift swapping, would also be necessary." *Id.* In other words, this undue hardship analysis is directed at an employer that does not provide a reasonable accommodation. But, as discussed in Section II.A., the Department has provided a reasonable accommodation. The Department has provided a seniority bidding process for lines and primetime leave, shift and line swaps, a first-come request system, and paid leave, including religious compensatory time. Am. Compl. ¶¶ 14, 17-19, 26-30, 62; Def.'s Stmt. Nos. 6-13; Def.'s Mot. (Ex. 1) at 51-248; Def.'s Ex. 6.

Because Plaintiff has been provided a reasonable accommodation, the Department is not required to litigate the merits of Plaintiff's preferred alternatives. *Philbrook*, 479 U.S. at 68 ("Thus, where the employer has already reasonably accommodated the employee's religious needs, the statutory inquiry is at an end.").

## III. <u>Plaintiff Cannot Satisfy the Third Element of His *Prima Facie* Burden</u>

### A. *Muldrow* Did Not Alter the Discipline Element, and Plaintiff Fails to Satisfy the Third Element of Disciplinary/Adverse Action

Plaintiff argues the lowered threshold in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024), encompasses the harms he describes, and the Department relies on cases that are pre-*Muldrow* and distinguishable. Pl.'s Opp'n at 18-20. Plaintiff's first argument depends on harms the Amended Complaint does not allege, and his second argument relies on readings of *St. Juste* and *O'Neil* that those opinions do not support.

In *Muldrow*, the Supreme Court held that a plaintiff challenging a discriminatory job transfer "need show only some injury respecting her employment terms or conditions." 601 U.S. at 359. While *Muldrow* restated the required magnitude of harm alleged to have been discriminatory, it did not involve a failure-to-accommodate claim and did not change the formula used in this district to ascertain whether an accommodation has in fact been denied. To satisfy a *prima facie* burden for a failure to accommodate claim, a plaintiff must show: "(1) they held a bona fide religious belief conflicting with an employment requirement; (2) they informed their employers of this belief; and (3) they were disciplined for failure to comply with the conflicting employment requirement." *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006). The third element is important because, if an employee has not been disciplined for self-accommodating, it cannot truly be said that he has been denied accommodation. Plaintiff cannot satisfy the third element.

In his opposition, Plaintiff identifies three forms of discipline to satisfy the third element. Those three injuries are "eschewing his earning and using religious comp time has caused him to exhaust his sick leave and paternity leave"; he "has been unable to spend time with his wife and their baby on multiple occasions when he is needed at home because he has exhausted his paternity leave one Sabbath at a time"; and he "has been unavailable to take his children to doctors' appointments because his sick leave has been coopted." Pl.'s Opp'n at 14.

The third injury is not in the Amended Complaint and should not be considered. "Doctor" is not in the pleadings. The assertion derives from Plaintiff's declaration filed with his opposition. *See* Pl.'s Opp'n at 44, ¶ 28. A plaintiff may not amend his complaint through an opposition brief. *See Pappas v. District of Columbia*, 513 F. Supp. 3d 64, 91 (D.D.C. 2021) ("[T]he Court may not consider any new allegations such as these raised for the first time in a plaintiff's opposition to a

motion to dismiss."); *Ace Am. Ins. Co. v. Fed. Crop Ins. Corp.*, 209 F. Supp. 3d 343, 347 (D.D.C. 2016), *aff'd,* 732 F. App'x 5 (D.C. Cir. 2018) ("[a] plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment.").

Regarding the remaining two harms, they are not forms of discipline for failure to comply with conflicting employment requirements. Plaintiff is dissatisfied with how he has had to use his leave days. But Plaintiff has never worked a Sabbath, and every Sabbath absence, Plaintiff was paid for. Am. Compl. ¶ 18; Def.'s Mot. (Ex. 1) at 51-248; Def.'s Ex. 6. The leave Plaintiff used was drawn from balances available to him for the purposes he chose. While Plaintiff would have preferred to spend those leave hours otherwise—how Plaintiff chooses to spend his leave hours is not discipline. *See O'Neill v. City of Bridgeport Police Dep't*, 719 F. Supp. 2d 219, 226 (D. Conn. 2010) ("The Court also rejects Mr. O'Neill's claim that he suffered an adverse employment action because he was forced to use his vacation days to take Saturdays off, and thus could not use them for other purposes such as an actual vacation. Mr. O'Neill was not deprived of a material benefit, he simply chose to use the benefit in a particular way.").

Moreover, Plaintiff's first alleged harm is misstated. Plaintiff claims the Department is "eschewing his earning and using religious comp." Pl.'s Opp'n at 19. But that claim is belied by Defendant's Exhibits 4 and 5, showing Plaintiff has used more than 280 hours of religious comp time in advance of working of the offsetting hours. Def.'s Exs. 4 and 5 (Def.'s Mot.) at 252-55.

### B. The Case Law Shows Plaintiff Cannot Meet His Burden

Plaintiff claims that *St. Juste* "preceded *Muldrow* and applied the standard which *Muldrow* rejected" and "[i]n any event, the *St. Jude* (sic) court ultimately found that the plaintiff's supervisor ending the arrangement under which he used compensatory time to attend a prayer session and requiring him to use annual or unpaid leave was sufficient to support a prima facia case." Pl.'s Opp'n at 19 (citing *St. Juste v. Metro Plus Health Plan*, 8 F. Supp. 3d 287, 305-06 (E.D.N.Y.

2014)). First, Plaintiff's citation is to the adverse action element for a disparate treatment theory, not the failure to accommodate theory. Second, the court's analysis turned on an actual loss in pay—termination of a religious comp time agreement was materially adverse "in light of the fact that Plaintiff was not paid for approximately 30 minutes that he took off for religious observances on Friday afternoons, for a period of two to three months." *St. Juste*, 8 F. Supp. 3d at 305-06.

The court's analysis of the failure to accommodate claim begins ten pages later. "The case law is clear that requiring an employee to use *paid* leave to attend religious services does not constitute an adverse employment action." *Id.* at 316 (collecting cases) (emphasis in original). The court then noted "it is less clear that being required to take *unpaid* leave for religious observances comprises an adverse action for purposes of a failure to accommodate claim." *Id.* at 317 (collecting cases) (emphasis in original). The court then noted that "in the discrimination context courts find that being required to take unpaid leave can be an adverse employment action" and "the Court will assume Defendant's failure to pay for time off to be 'discipline' for purposes of Plaintiff's *prima facie* case, and assume that he has established a *prima facie* case." *Id.* at 318.

In other words, the *St. Juste* court drew the paid/unpaid line—paid leave is not discipline and does not satisfy the third element, while unpaid leave is presumed to satisfy the third element.

In *St. Juste*, the court then analyzed whether a reasonable accommodation was provided and held that unpaid leave is a reasonable accommodation. "In the absence of evidence that Plaintiff was singled out such that the requirement that he use unpaid rather than paid leave is an aberration in Metro Plus's practices with respect to other employees, the Court cannot find that the accommodation afforded to Plaintiff—that he take unpaid leave in order to attend Friday prayers—is an unreasonable one." *Id.* at 319; *see also id.* at 318 ("Defendants are correct; this is a reasonable accommodation.") (collecting cases).

The facts in *St. Juste* are materially worse, where the plaintiff took unpaid leave on Fridays for several months and lost pay, and the court found unpaid leave was a reasonable accommodation because there was no evidence that the plaintiff was singled out. Here, Plaintiff has not been singled out. Plaintiff has not been on unpaid leave and lost pay. Plaintiff has always been on paid leave for Sabbath-observance. Accordingly, under *St. Juste*, Plaintiff cannot satisfy his *prima facie* burden because he was on paid leave, and Plaintiff was provided a reasonable accommodation.

Next, Plaintiff describes *O'Neill*, 719 F. Supp. 2d at 227, as holding "use of comp time and vacation time can be a reasonable accommodation." Pl.'s Opp'n at 19. Plaintiff "does not dispute" this holding. *Id.* But *O'Neill* went further, rejecting the plaintiff's argument that "he suffered an adverse employment action because he was forced to use his vacation days to take Saturdays off, and thus could not use them for other purposes such as an actual vacation." 719 F. Supp. 2d at 226. The plaintiff "was not deprived of a material benefit, he simply chose to use the benefit in a particular way." *Id.* The police department "gave each of its employees a certain number of vacation days based on seniority, and each employee could use his days however he pleased," so that the plaintiff "was in precisely the same position as all other Bridgeport police officers." *Id.*

Here too, the same reasoning applies. Plaintiff is afforded leave, the same as his colleagues, and Plaintiff may use it as he chooses, which is not an adverse employment action.

Finally, Plaintiff discusses *Abdelkader v. Sears, Roebuck & Co.*, 780 F. Supp. 2d 389 (D. Md. 2011). Pl.'s Opp'n at 20. In *Abdelkader*, the court's decision did not depend on the leave category. "[A]n employer does not commit an adverse act if he permits his employee to take leave to avoid working on a religious holiday, even if the employee feels that requiring her to use leave is unfair and coercive." *Abdelkader*, 780 f. Supp. 2d at 395. The court, accepting plaintiff's assertion that she had been told to work on eight Fridays, ruled she did not satisfy the third element

because she did not claim "that [her supervisor] coerced her into working on the eight Fridays at issue, that she could not have taken leave to avoid working on those days, or that her refusal to work on Fridays led to her termination." *Id.* at 395. Moreover, the Court also noted the defendant had met its accommodation burden by permitting the plaintiff "to swap shifts so that she would not have to work on [a religious holiday]." *Id.* at 394.

Here, similarly, the Department offers voluntary shift swaps. Def.'s Stmt. No. 10. Further, Plaintiff has never worked on the Sabbath, has used paid leave for every Sabbath-observance, and has never been terminated or otherwise disciplined. Am. Compl. ¶ 18; Def.'s Mot. (Ex. 1) at 51-248; *see also* Def.'s Ex. 6. Accordingly, under *Abdelkader*, Plaintiff fails to meet his *prima facie* burden, and the Department has provided a reasonable accommodation.

Plaintiff's broader claim, that each of the aforementioned cases are pre-*Muldrow* decisions and insinuating they are no longer good law is unfounded. *See* Pl.'s Opp'n at 19. In *Sandberg*, the court drew the same the paid/unpaid line that the court in *St. Juste* drew for a plaintiff who exhausted his leave and lost pay for his Sabbath-observance. 2025 WL 3550657, at *5-7.

Finally, the Section III heading in Plaintiff's opposition claims taking unpaid leave is an adverse action. *See* Pl.'s Opp'n at 18. But Plaintiff took no unpaid leave as discussed in Section V.C. Even if Plaintiff had taken unpaid leave, a single eight-hour unpaid absence (for which he was ultimately paid for), would not be discipline. *See Philbrook*, 479 U.S. at 70–71 (cleaned up) ("Generally speaking, the direct effect of unpaid leave is merely a loss of income for the period the employee is not at work; such an exclusion has no direct effect upon either employment opportunities or job status."); *Tepper v. Potter*, 505 F.3d 508, 514 (6th Cir. 2007) ("[M]ore than loss of pay is required to demonstrate discipline or discharge.").

## IV. Plaintiff's Disparate Treatment Was Not Exhausted and Is Not Plausibly Pled

### A. Plaintiff's Disparate Treatment Claim Was Not Exhausted

Plaintiff claims the disparate treatment claim was exhausted because he "gave notice that he was alleging disparate treatment as part of his charge which gave the EEO investigator the opportunity to include that claim in the investigation." Pl.'s Opp'n at 20. However, Plaintiff did not provide a factual basis for investigators to be on notice of a discrimination claim.

Plaintiff's reliance on *Bain v. Office of the Attorney General*, 648 F. Supp. 3d 19 (D.D.C. 2022), is misplaced. Pl.'s Opp'n at 21-22. In *Bain*, the court explained that *Morgan*, "undercut the 'like or reasonably related to' rule and that 'plaintiffs alleging discrete acts of discrimination . . . must exhaust the administrative process regardless of any relationship that may exist between those discrete claims and others.'" *Id.* at 45 (quoting *Rashad*, 945 F. Supp. 2d at 166). The court went on further to note "labels are not dispositive, facts are, and thus Bain cannot bring any claims in this case based on conduct that she failed to identify in her EEO complaint." *Id.* at 47.

Here too, Plaintiff's claim is not exhausted because there is an absence of facts. Plaintiff filed the ROI with his opposition, and the Final Agency Decision is an exhibit as well. *See* Pl.'s Ex. B, ROI (Pl.'s Opp'n) at 46-59; Def.'s Ex. A, Final Agency Decision (Def.'s Mot.) at 39-50. While Plaintiff contends he provided notice by his allegations in the EEO complaint, Plaintiff points to nowhere in the ROI or Final Agency Decision to support his claim. Instead, Plaintiff identifies paragraphs 71-73 of the Amended Complaint. *See* Pl.'s Opp'n at 22-23.

Indeed, there are no facts alleged in the ROI that would prompt an investigation into any discrete act of alleged discrimination. The title page of the ROI provides that the "Nature of action . . . giving rise to complaints" is a "denial of a religious accommodation request" on "June 10, 2022." Pl.'s Ex. B ROI (Pl.'s Opp'n) at 46. The management testimony, and Plaintiff's testimony focus on accommodation for a schedule change to not work on the Sabbath. *See id.* at 47-48.

There is a single reference by Plaintiff to another employee in his testimony—that Plaintiff "was told no because someone else wanted the morning shift." *Id.* at 3. What Plaintiff identified is the Department explaining another request. Plaintiff does not provide any basis to suggest the other colleague was treated more favorably based on religion. In other words, there is no information in the ROI to put the EEO investigator on notice that Plaintiff claimed disparate treatment. Plaintiff alleged a reasonable accommodation claim. *See* Pl.'s Ex. B ROI (Pl.'s Opp'n) at 46 ("Denial of religious accommodation request"); *see also* Def.'s Ex. 8 (EEO Complaint).

Plaintiff's authorities confirm this point. In *Dixon v. Ashcroft*, 392 F.3d 212 (6th Cir. 2004), the Sixth Circuit found exhaustion because the statement attached to the EEOC complaint recounted the factual narrative to support a claim for retaliation. *Id.* at 217-18 ("I contend that Bob Reutter discriminated against me, causing the Bureau to do the same, because of Race, fictitious information he received from two other agents *and because the Applicant Program was removed from his direct supervision because of continued harassment.*") (emphasis in original). The court then contrasted the case with "others where courts have determined that the plaintiffs did not allege facts in their EEOC complaints to meet the expected scope of investigation test." *Id.* at 218. And, in *Loffredo v. Daimler AG*, 666 F. App'x 370, 379 (6th Cir. 2016), the Sixth Circuit upheld a finding of non-exhaustion for failure to satisfy the scope of investigation test where the EEOC charge alleged "different conduct by a different employer from a different timeline."

Here, Plaintiff has failed to point to anything in the EEOC complaint, the ROI, or the Final Agency Decision that would satisfy the scope of investigation test because Plaintiff does not allege factual allegations that could be characterized as discrimination on the basis of religion.

Accordingly, Plaintiff's disparate treatment theory is unexhausted and should be dismissed.

**B. Plaintiff's Disparate Treatment Claim Fails on the Merits**

Plaintiff contends the Department's comparator argument is "undercut by Defendant's own Statement of Undisputed Facts about the first-come-first-serve basis for requested leave." Pl.'s Opp'n at 23-24 (citing Def.'s Stmt. No. 12). But there are several issues with Plaintiff's claim.

First, the Department's statement is "Plaintiff admits requests are 'supposed to be considered on a first-come-first-serve basis without regard to the nature or reason for the requested leave.'" Am. Compl. ¶ 29. The Department's statement is framed as Plaintiff making an admission about how a system is supposed to operate. However, Plaintiff disputes he is making an admission and thus disputes the fact. *See* Plaintiff's Counter Statement ("Pl.'s Stmt.") No. 12.

Second, Plaintiff claims the relevant comparison is not the individual's identity, seniority, certifications, qualifications for the positions that needed staffing, or the shift. Pl.'s Opp'n at 18-19. What matters under Plaintiff's theory for comparison purposes is "the same queue, the same date, the same rule" because Title VII "mandates that religious observance be prioritized." Pl.'s Opp'n at 18. This is because Plaintiff reads *EEOC v. Abercombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015), as requiring a first-come-first-serve leave system to prioritize his leave to observe the Sabbath above all others. In other words, Plaintiff reads the "favored treatment" language in *Abercrombie* to transform a first-come-first-serve system into a religious-first system. *Id.* at 775. That is not what Title VII requires or what the Supreme Court said.

In *Abercrombie*, the Supreme Court addressed a failure to hire case where the plaintiff wore a headscarf, the employer had a no-headwear policy, and the employer chose not to hire the plaintiff (who had been graded as qualified during the interview) because plaintiff's religious beliefs requiring her to wear a headscarf conflicted with their no-headwear policy. *Id.* at 770. The Supreme Court held that "favored treatment" obligates "employers not to fail or refuse to hire or discharge any individual because of such individual's religious observances and practice." *Id.* at

775 (cleaned up). *Abercrombie* applies where neutral policies may otherwise cause an employer to discriminate against an employee in the hiring or firing context. Nothing in *Abercrombie* addresses the contractual rights of coworkers or the seniority systems addressed by the Supreme Court in *Hardison* or by Congress in 42 U.S.C. § 2000e-2(h) and is therefore not applicable here.

Finally, Plaintiff relies on *Philbrook* to argue it is disparate treatment for Plaintiff to use paid leave to observe the Sabbath while other controllers are "accommodated when requesting leave for non-religious purposes." Pl.'s Opp'n at 24. It is not clear what Plaintiff means by other employees being "accommodated." In any event, Plaintiff's vague allegations fail to identify any comparators, and his claim should be dismissed.

## V. <u>The Department's Motion and Exhibits are Properly Before This Court</u>

### A. The Court May Rely on the Department's Exhibits Without Converting to Summary Judgment

As a preliminary matter, Plaintiff claims the Court may not consider the Final Agency Decision "through the lens of a 12(b)(6) motion." Pl.'s Opp'n at 3. The opposite is true.

Plaintiff quotes a decision from this Court, stating "documents that are 'referred to in the complaint … [and] central to the plaintiff's claim,'" may be considered on a motion to dismiss. Pl.'s Opp'n at 2 (quoting *Dismukes v. U.S. Dep't of Veterans Affs.*, Civ. A. No. 23-02259 (ACR), 2025 WL 343190, at *3 (D.D.C. Jan. 30, 2025)). Here, Plaintiff's Amended Complaint cites the Final Agency Decision and quotes from ROI. *See* Am. Compl. ¶¶ 83-89.

Under Plaintiff's position, he would allow himself to rely on the Final Agency Decision and a snippet of the ROI, while prohibiting the Department from responding in kind. *See* Am. Compl. ¶ 89 ("Ultimately, for the first time in the Final Agency Decision, Defendant concluded,

incorrectly, that permitting Mr. Zirkind to use sick leave (which violates its own policies and the [Collective Bargaining Agreement]) was a reasonable accommodation.").[5]

Similarly, Plaintiff makes his leave status central to his claims. As noted in the Department's opening brief "Plaintiff's Amended Complaint does not provide dates, frequency, duration, or amount. Yet, Paragraph 99 aggregates 'over 1000' hours across four leave statuses 'annual leave, sick leave, Paid Parental Leave, and unpaid leave' without disaggregating them—leaving no inclination of how many of those hours were purportedly without pay." Def.'s Mot. at 25 (quoting Am. Compl. ¶ 99). Defendant's Exhibits 1-5—Plaintiff's timesheets for January 2020 through June 2026—disaggregate those thousands of hours—showing that Plaintiff was temporarily coded on unpaid leave for one eight hour day, on November 5, 2022, but then ultimately re-coded to religious comp time and paid. *See* Def.'s Ex. 6; Newberry Decl. at 2.

**B. The Alternative Request for Summary Judgment is Properly Before the Court**

Plaintiff argues the Department failed to comply with this Court's Standing Order because its pre-motion notice did not reference moving for summary judgment. Pl.'s Opp'n at 8. The Department did not include an alternative request for summary judgment in its pre-motion notice, and asks the Court to consider it *nunc pro tunc*. The unpaid-leave allegations were inserted in the Amended Complaint. Am. Compl. ¶¶ 18, 96. The Department's filed its pre-motion notice on March 30, 2026, addressing the unpaid leave issue. *See* ECF No. 25 at 4-5.

The Department then attempted to resolve the unpaid leave issue with Plaintiff after the pre-motion notice was filed. On April 7, 2026, the Department first notified Plaintiff's counsel it ran a search and did not identify any instances of Plaintiff being on unpaid leave except for one

[5] There is no discussion of unpaid leave in the Final Agency Decision or the Record of Investigation.

temporarily miscoded leave without pay on November 5, 2022, which was re-coded to paid leave the next pay period. *See* Def.'s Ex. 7. Plaintiff's counsel did not respond. The Department followed up a second time in August, and Plaintiff's counsel did not respond. The Department then decided to move in the alternative for summary judgment while preparing its motion to dismiss, so the timesheets could be put before this Court in an effort "to secure the just, speedy, and inexpensive determination" of this action. Fed. R. Civ. P. 1.

Plaintiff identifies no prejudice to the alternative request for summary judgment. Plaintiff filed a counter-statement, a declaration, and nine exhibits. Plaintiff did not identify any discovery he needed or file an affidavit under Federal Rules of Civil Procedure 56(d).

### C. The Department's Exhibits Are Admissible

Plaintiff does not dispute the CASTLE records are agency public records. Pl.'s Opp'n at 24-27. Under the Federal Rules of Evidence 803(8), the timesheets are public records, and Plaintiff has not identified any indica of untrustworthiness. Rather Plaintiff contests that the exhibits are not explained. The main thrust of the exhibits, as noticed to Plaintiff, is to show that Plaintiff was never on unpaid leave. *See* Def.'s Exs. 6 and 7; Newberry Decl. at 2. Plaintiff reviewed the six years' of timesheets and identified one instance where Plaintiff was temporarily coded for unpaid leave and fixed the next pay period. Plaintiff was paid (Def.'s Ex. 6):

| **Record** | **TA Type** | **Processed** | **Approved by** | **11/05/2022 code** |
|---|---|---|---|---|
| Def.'s Ex. 6 at 1-2 | Original | 2022223 | Thompson, Cherie M | 043—Religious Comp Time Used |
| Def.'s Ex. 6 at 2-3 | Amended | 2022224 | Parks, Richard L | 12—Leave Without Pay |
| Def.'s Ex. 6 at 3-4 | Amended | 2022225 | Merlin, Carrie L | 043—Religious Comp Time Used |

* * *

Dated: September 29, 2026
Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

By: */s/ Robert J. Morris, II*
ROBERT J. MORRIS, II
D.C. Bar #1719434
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2534
robert.morris@usdoj.gov

*Attorneys for the United States of America*